JAMES H. HAUGHTON, Executor, *et al. v.* MARY W. BRANDON.

1. LAST WILL AND TESTAMENT: INTENTION OF TESTATOR.—The intention of the testator is deduced from a consideration of the will in all its parts, and the circumstances under which it was made, as shown on its face.

2. LAST WILL AND TESTAMENT: CONSTRUCTION : CASE IN JUDGMENT.—The will of the husband of appellee contains this clause : "That his wife shall have ample support out of his estate until such time as may be required to enable her to have control of her own property." Held—That the widow was entitled to an ample support until the time of the general distribution of the estate, and that her consent to a sale on a credit of the property of the estate, by the executors for the purpose of division, was not a waiver of her right.

3. LAST WILL AND TESTAMENT : AMPLE SUPPORT FOR THE WIDOW, HOW DETERMINED.— What is a reasonable allowance, as an ample support for the widow, is to be determined by the manner in which the husband was accustomed to live, and the value of his estate.

APPEAL from the Probate Court of Monroe county. Hon. W. A. Tucker, judge.

The will of Thomas Brandon is as follows :

WILL.

In the name of God, Amen. I, Thomas Brandon, being of sound and disposing mind and memory, and, but a few days past, having entered my seventieth year, consequently I must shortly go the way of all the earth and pass that bourne whence no traveler returns ; and Divine Providence, coupled with my own exertions, having blessed me with some of this world's property, and being very anxious to dispose of said property in such way as will the most redound to the equal benefit of my dear wife and all my children, before I am called hence ; for that purpose I do hereby make, declare, and publish this writing, as and for my last will and testament, hereby revoking all wills and codicils by me heretofore and previously made. It is my will and wish that everything I possess in the way of property or money, both real, personal, or mixed, shall be equally divided between my wife, Mary W. Brandon, and my eight children, namely : Caledonia R. Mills, Mary Margaret Jordan, Julia A. Haughton, Sarah Eliza Beuford, Frances Caroline Haughton, and Cornelia W. Clopton, all children of mine by my first wife ; and Martha

Elizabeth McNairy and Morgia Smith McNairy, both children of mine by my last wife, share and share alike, a few special legacies excepted, which will be presently mentioned. I leave it discretionary with my wife and all my children, and my executors hereinafter named, to divide all my property immediately after my death, and each legatee become separately responsible for an equal proportion of all the debts I may owe at the time of my death, or keep all the property together until the whole of my debts are paid. I do not wish my dear wife to dissent to or from this my last will and testament; neither do I believe she will do so, unless some evil-disposed person or persons shall persuade her to do so; but in the event she shall dissent, it is expressly my will and wish, that whatever of property or money she may acquire of or from my estate by such her dissent, more than a child's part or her equal share of my estate, shall be taken from the shares of my two daughters, of whom she is the mother, and shall be equally divided amongst all my children; and this is done for no other purpose than to prevent one portion having any advantage over the others in the equal division of all my property; for, as they are all alike dear to me, are equally beloved by me, it is my settled and fixed purpose that they shall all share equally in my estate, both real and personal and mixed, so far as it is in my power to have it so. It is also my will and wish, that if any of my children, or their husbands, shall be indebted to me at the time of my death, such indebtedness shall be paid by those who are so indebted out of their shares of my estate, or otherwise as the parties interested may choose; the debtors reserving to themselves their portion of the amount of their indebtedness to my said estate. It is my will and wish, and I do hereby bequeath to my son-in-law, John F. Mills, $1,000, and this I do as a small compensation for the great trouble and expense he has incurred in attending to my business at all times and on all occasions, some of which have been very perplexing and disagreeable, in which he did great service to my estate; and also for his uniform and kind attention to my person. I look upon this legacy more in the light of a debt than a gift or bequest. I give and bequeath to

my son-in-law, Dr. Henry A. Beuford, my silver watch, to him and his heirs forever. I give and bequeath to my very industrious and worthy young friend, Mr. Thomas Vandozier, a negro boy large enough to bear .off brick, to be selected by my executors, so as not to separate the little boy from his mother if it conveniently can be avoided, to him and his heirs forever. This I do as a memento of his great devotion to my interest and to my person. It is my will and my wish that my wife, Mary W. Brandon, shall occupy the house and lot I may reside in and on next before and at the time of my death, together with the furniture, free of charge, so long as she chooses to remain my widow ; when she ceases to occupy that capacity, it is my will and *wish* that the house, ground, and furniture be sold to the best advantage, and the proceeds be equally divided between my said wife, and all my children, share and share alike, or the children of those who may die. It is also my will and wish, that my wife, Mary W. Brandon, shall have as her own the carriage and horses that may be on hand at the time of my death. It is also my will and wish, that my wife, Mary W. Brandon, shall have an ample support out of my estate, until such time as may be required to enable her to have control of her own property. It is my will and wish, that my wife shall have as her own property the following five slaves, viz. : Amanda, Ellen, Ann, Mariah, and Tom Branch ; and such other property and money as my children have heretofore received. I have heretofore given each of my children five negroes, and have also given them other property and money ; and it is my desire that my wife shall be placed upon an equal footing in the division of my property with my children. My children all know what they have received from me, and I wish my wife to receive a like amount ; and this last bequest must take effect before a division of my property is made ; and when this is done I think none will have cause to complain.

It is further my will and wish, that no charge shall be made against any of my children for the use of any property whatever, or money I may have heretofore given them, or for any labor I may have heretofore done for them, or may hereafter

do for them, as I consider when I die I shall have done my duty for them all as nearly equal as I could. It is also my will and desire, that my two sons-in-law, Jesse G. Jordan and Philip J. McNairy, shall retain and keep, as parts of their portion of my estate, the tracts of land of one section each which I have recently let them have the possession of in Monroe county and State of Mississippi, which are known as the land I purchased ·of my son-in-law, John F. Mills, and which he purchased of Dr. Duncan. When I gave them possession of the lands, I directed with their knowledge and consent, and for the purpose of bene- fiting my said sons-in-law, that eighty acres of prairie land should be taken from section 20 and added to section 17, and that eighty acres of timbered land should be taken from section 17 and added to section 20 ; and it was then agreed between them, that the said Philip J. McNairy should pay to the said Jordan $3,000, that being the difference in value between the two tracts of land added to and subtracted from as above mentioned. If my said sons-in-law, Jordan and McNairy, should prefer letting the said tracts of land be regarded as parts and parcel of my estate, subject to the general division hereinbefore mentioned, they shall have the option of doing so upon the refunding of any money that may have been paid to the said Jordan by the said McNairy, according to their aforesaid agreement ; but if they retain and keep said tracts of land, then it is my will and desire, that the addition and subtraction of eighty acres, as above described, shall be fully carried into effect according to my directions, and the agreement of my said sons-in-law ; and it is my further will and desire, that my said sons-in-law, Jordan and McNairy, shall not be chargeable with any rent for said lands during the first year of their possession thereof, but as those tracts of land are each estimated by me as worth $1,100 per annum, it is my will that the said Jordan and McNairy, in the division of my estate after my death, shall have no advantage over my other children from the use of said lands after the first year as aforesaid, and it is therefore my will and directions that my other children shall each have from my estate as much as the use of said land is worth to the said Jordan and McNairy,

and which is estimated and fixed by me at $1,100 per annum as aforesaid. In addition to my watch, I do hereby give and bequeath to my son-in-law, Dr. Henry A. Beuford, the best saddle-horse I may have at my death, together with my saddle and bridle. It is my will and wish, that Betsy Easley shall be free at my death, or so soon thereafter as she arrives at the age of forty-seven, and that my executors hereinafter named shall dispose of her, to the best advantage for my wife and children, until that time arrives.

All this is done for the great attention and kindness this servant has ever shown to me in the many severe spells of sickness I have heretofore passed through. I have a few other old servants, who having been faithful and kind, whom I would like to free; but on account of old age freedom to them would be a curse instead of a blessing. Therefore my will and desire is, that my executors shall make ample provision for such out of my estate, or let each legatee pay so much annually for the comfortable support of these old servants so long as they may live. My children all know my desire on this subject, and I doubt they will be carried out to the very letter. It is my will and also my wish, and I do hereby order and determine, that none of the property heretofore or hereafter to be given to my children by me shall be sold or disposed of by their husbands, respectively, unless my daughters shall first give their free and full consent thereto in writing. I am of the opinion that the laws of Mississippi provide well for the female in warding off the encroachments of their husbands in regard to what property they inherit from their parents, and it is my wish and desire, that such laws in all their force shall govern and control the action of those who may have the management of the property I have heretofore given my children, and now give them in this my last will and testament. If it should be the will and pleasure of my wife and children, that the Rev. William McMahon shall preach my funeral, and he should do so, I wish him to have the sum of $100 for the same out of my estate before a division takes place; and as my daughter, Caledonia, knows my wishes on the subject of that part of the property

which will belong to her, her action in the premises will be satisfactory to me.    Whereas it might be thought by some that there are two clauses in this my last will and testament, in which ambiguity might appear, which calls for explanation from me, which I now proceed to give as follows :

In order that those interested may at once know my intention in this matter : When and as my children married I gave them all an equal portion of negroes and other property, as nearly as I could do, and to some in lieu of property which they did not want I gave money, and for some I did brick work.

This is what I mean that there shall be no charge whatever made, as I think I have made them all about equal in this respect ; but some of them may owe me at my death for debts contracted long since their marriage, irrespective of what I gave them at their marriage.    These are the debts I wish my children who are indebted to me to pay to my estate after my death, if they should not be paid to me before that time.    And lastly and finally, I do hereby appoint my beloved wife, Mary W. Brandon, executrix, and John F. Mills, Jessie G. Jordan, Dr. Henry A. Beuford, James H. Haughton, William P. Haughton, William H. Clopton, John O. McNairy, and Philip McNairy executors of this my last will and testament.

Witness my hand and seal this the 15th day of October, 1857.

THOMAS BRANDON. [L.S.]

CODICIL TO THE LAST WILL OF THOMAS BRANDON.

Whereas I, Thomas Brandon, of Monroe county and State of Mississippi, have made my last will and testament, bearing date October 15th, 1857, in and by which I have declared my intention to divide my estate with perfect equality, as far as I can, between my wife and children, and have also declared it to be my will and wish, that if any of my children or their husbands shall be indebted to me at the time of my death, that such indebtedness shall be paid by those who are so indebted, out of their shares of my estate, or otherwise, as the parties interested may choose, the debtors reserving to themselves their

portion of the amount of their indebtedness to my said estate; and whereas, also, I have lent and advanced heretofore to my son-in-law, John C. McNairy, the husband of my daughter Martha Elizabeth McNairy, the sum of five thousand dollars, for which he executed and delivered his bond to me bearing date October 27th, 1858, and payable on the 1st of November, 1858, with interest at the rate of eight per cent. per annum from maturity; and have also paid to McDowell, Withers & Co., for the use and benefit of the said John C. McNairy, and at his request, the sum of three thousand and thirty-seven $\frac{10}{100}$ dollars, for which he executed and delivered his bond to me dated March 20th, 1858, payable twelve months after date, for the said last-mentioned sum, with interest from date at the rate of eight per cent. per annum; and the said John C. McNairy being also indebted to me in the sum of nineteen hundred dollars, for the rent of land in the county aforesaid, for which he executed and delivered to me his bond bearing date December 15th, 1858, payable on the 1st day of January, 1859, for the aforesaid sum of nineteen hundred dollars; and whereas, also, I have bought from the said John C. McNairy the following named slaves, viz.:

Henry, about thirty years of age; Lucy, about 25 years; Lewesrat, about 22; Francis, about 21; Mary Jane, about 5; Alsey, about 3; Annie, about 38, and her child Annie, about 18 months old; Tim, about 6 years of age; Lucy Jane, about 20; Nat, about 55; Mary (Nat's wife), about 35; Grace, about 14; and Turner, about 28 years of age; and have received from the said John C. McNairy his bill of sale of said slaves and the possession thereof, the consideration of which purchase being the indebtedness of the said McNairy herein before described; and whereas I have also, by bill of sale of this date, in consideration of natural love and affection, conveyed the said slaves to my daughter Martha Elizabeth McNairy, as her separate property, as fully and completely as married women can hold separate property by the laws of Mississippi, and have delivered the said slaves to my said daughter, the true interest and meaning of said bill of sale and delivering of possession to my said

daughter being an advancement to her out of that portion of my estate to which she will be entitled to after my death, according to my will aforesaid. Now I do by this writing, which I hereby declare to be a codicil to my last will and testament aforesaid, and to be taken as a part thereof; and in conformity with my intention, fully expressed throughout said will, to be impartial and to divide my estate equally between my children, order and declare that my will is, that out of the equal share of my estate to which my daughter Martha Elizabeth McNairy may be entitled after my death, there shall be deducted the sums of money hereinbefore expressed, amounting, without interest, to the sum of nine thousand nine hundred and thirty-seven and $\frac{10}{100}$ dollars, or property real or personal worth that sum of money, and that the said Martha Elizabeth shall stand chargeable to my estate, with interest at the rate of eight per cent. per annum upon the sums aforesaid, from the time the said bonds, as herein described, on their face begin to bear interest. And lastly, it is my desire that this codicil be annexed to and made a part of my last will and testament as aforesaid, to all intents and purposes.

Witness my hand and seal, this 30th day of December, 1858.

THO. BRANDON. [L.S.]

### CODICIL SECOND.

Whereas, I, Thomas Brandon, of Monroe county, Mississippi, have made my last will and testament, bearing date the 15th day of October, 1857, and in which I have bequeathed and devised to my wife and eight children all my property, real and personal of every description, to be equally divided between them at my death, and have also made a codicil to my said will, bearing date the 30th of December, 1858, with reference to the interest in my estate of my daughter Martha Elizabeth McNairy; and whereas my daughter Sarah Eliza Beuford, wife of Dr. Henry Beuford of Huntsville, Ala., has since the making of said will departed this life: Now, therefore, by this writing which I hereby declare to be a second codicil to my said last will and testament, and to be taken as a part thereof, order and

declare that my will is that the aforesaid Dr. Henry Beuford, shall be entitled to receive after my death the full legal share of my estate of every kind, which my said daughter would have been entitled to if she had survived me, and that he shall have individually as full and perfect control of the same, and power of disposition and sale, as if it had been given directly to him in my said will, having the fullest confidence in the good judgment and perfect integrity of the said Beuford, and believing that he will prudently dispose of and manage the property devised and bequeathed to him with a view to the best interest of the children of his marriage with my said daughter. It is my will that he be substituted in the division of my estate in the place of my said daughter, and that he be entitled in all things to receive every benefit and advantage intended in my said will for my said daughter Sarah Eliza, and it is my desire that this codicil be annexed to and made a part of my said last will and testament to all intents and purposes.

Witness my hand and seal this 3d day of January, 1859.

THOS. BRANDON, [L.S.]

### CODICIL THIRD.

Whereas, I, Thomas Brandon, of Monroe county, and State of Mississippi, have made my last will and testament, bearing date October 15th, 1857, and have made a codicil bearing date January 3d, 1859, which said codicils are attached to my said will, and whereas one of the five negroes, viz., Amanda, specially bequeathed to my wife, Mary W. Brandon, has departed this life, and whereas my said wife has never had separate possession of said negroes, and will not be entitled to separate possession of them until after my death : Now therefore, I do by this writing, which I declare to be a third codicil to my said last, and to be taken as a part thereof, order and declare that my will is, that my said wife shall have the right to select among all my negroes, with the exception of such as are mechanics, another one in place of the said Amanda, and I further declare and order that it be my will, that if any other one or more of the five negroes, bequeathed to her specially as above, shall die

47

before my will takes effect, in that event my said wife shall have the right to select amongst all my negroes, not mechanics, such as she may prefer to supply the place of those who may die, it being my intention to place my wife on the same footing with my children, to each of whom I advanced five negroes at the period of their marriage, as expressed in my will aforesaid, and gave them separate possession thereof. And it is my desire that this codicil be annexed to, and made part of, my said last will and testament to all intents and purposes.

Witness my hand and seal this 3d day of May, 1859.

THOS. BRANDON, [L.S.]

The petition introduced E. R. Wallace, who testified as follows: I was acquainted with the testator, the late Thomas Brandon. I have known him and his habits for living for many years; I have very often been in his house, on easy and familiar terms; have seen the style of living at breakfast, dinner, and supper; have seen the furniture of the different rooms of his house. Mr. Brandon entertained much company for thirty years before his death; his style of living was not ostentatious or extravagant. He cared but little for mere show. His house however was well furnished, and his manner of living was such as perhaps cannot be better described than by using the word bountiful. I am sure that I have no personal acquaintance with any one who provides for his family more bountifully than he did, in what may be called the comforts and conveniences of life as distinguished from mere fashion and show. What would be an *ample support* for his widow, cannot be defined with precision. His estate was sold for $262,000, or thereabouts, and his estate was encumbered with debts. Judging from the manner of living of the family in the lifetime of Mr. Brandon, and from my own family expenses in the city of Aberdeen, where petitioner lives, and my observations of the expenses of others, I should think that the sum of $2,000 per annum would be rather a limited than an ample support for Mrs. Brandon. I consider the word *ample support* embracing such expenses as might be incurred in occasional visits to distant relations from kindred

feeling or in cases of sickness, and also such as might be incurred in cases of discreet recreation. If I am correct in the meaning of the word *ample support*, then I think Mrs. Brandon would be entitled to at least $2,500 per annum, out of her husband's estate, until she gets possession of her property under the will. On being asked by counsel for executors what amount of money it required to defray his (witness's) family expenses per annum, witness stated that he had never kept a regular account of his expenses, and did not know; his family consists of himself and wife. John W. Vesey, who testified : I was acquainted with Col. Brandon. Was often a visitor at his house; his family occupied a high position in the society of Aberdeen. While not very ornate, his family lived abundantly and sumptuously, and entertained in the best of style many strangers, friends, and relatives; indeed, Col. Brandon was noted for his hospitality. To maintain his widow in the manner and position in which she has been accustomed to live and move, I would say that $2,000 would be but a reasonable allowance. I make this estimate from comparing the cost of maintaining my own family in plain style, with the cost of living in Aberdeen in the manner in which Col. Brandon's family lived.

Petitioner introduced Josiah N. Walton, who testified that he had known the late Col. Brandon, husband of petitioner, about fifteen years; was frequently at his house. He and his family occupied a high position in society—say the first circle of society. Witness does not know much about his style of living at home; thinks he entertained. To enable the widow to keep up the same style of living, would require from $2,500 to $3,000. It was agreed by counsel that the testator, Thomas Brandon, died in Aberdeen, the place of his last residence, on the 23d of August, 1859, leaving a last will and testament; that the widow retained possession and control of the said residence and household and kitchen furniture; also, the carriage and pair of mules on hand at that time. That said residence and furniture is worth $10,000, and the annual rent thereof $400. The carriage and mules were worth $2,000. That on the — day

—— 1859, previous to the sale on the 12th December, 1859, executors delivered to her the special legacy under the last will and testament of deceased, viz.: five negroes and the sum of $300 ; that, at the time of testator's death, there was a good supply of provisions on hand, such as bacon, lard, sugar, coffee, flour, etc., which the widow used at discretion, without any restraint, until the appraisement of the estate in October, 1859, when the remnant of the above, value of $110, was delivered to her by executors ; and that petitioner has no family except herself and niece.    That since testator's death, under an order of Probate Court, his entire estate, both real and personal, except the special legacies, has been solved for the purpose of distribution among the legatees, the aggregate proceeds of which was $236,510.    That said sale of real estate was on a credit of twelve and twenty-four months, and the personalty on a credit of twelve months ; that the widow gave her consent in writing to said sales.    That prior to testator's death, all of his children (who were daughters) had married, and left his house. That on the ——. day of ——, 1855, the testator permitted his two sons-in-law, P. J. McNairy and J. G. Jordan, to go into the possession of the two tracts of land, as stated in the will. That said tracts at testator's death, were by him estimated at $15,000 each, and their yearly rent of the value of $1,100 each.

*L. Haughton, Sale* and *Phelan,* for appellants.

*Dowd* and *Sykes,* for appellee.
The arguments of counsel are too lengthy for insertion.

HANDY, C. J., delivered the opinion of the court.

The appellee, the widow of Thomas Brandon, deceased, filed her petition in the Court of Probates against the appellants, as executors of her husband, praying that they might be decreed to pay her a sum of money for her support, which she claimed to be entitled to under the provisions of her husband's will. The executors answered, denying her right to the allowance

claimed, under the will; and on the hearing, upon the pleadings and proofs, the court decreed her an annual allowance of $2,000, and from that decree the executors took this appeal.

The first and most important question in the case is, whether, by a proper construction of the will, the widow was entitled to the allowance for support claimed in her petition.

The parts of the will necessary to be taken into view, in determining this question, are in substance as follows:

In the first place, he leaves all his property, real, personal, and mixed, to be equally divided between his widow and eight children named, share and share alike, leaving it to the discretion of the widow and children, and his executors, to divide all his property immediately after his death, and each legatee to become responsible separately for an equal proportion of his debts; or to keep it together until all the debts should be paid. After some other provisions and special legacies, not material to the present case to be stated, it expresses the wish that his widow should occupy the house and lot, his place of residence, with the furniture, free of charge as long as she might choose, and as long as she remained a widow; but when she should cease to be so, that the property should be sold, and the proceeds equally divided between her and his children; that she should have as her own the carriage and horses on hand at the time of his death. Then follow these clauses, which are the provisions on which her claim in this petition are founded : "*It is also my will and wish, that my wife, Mary W. Brandon, shall have an ample support out of my estate, until such time as may be required to enable her to have control of her own property.* It is my will that my wife shall have, as her own property, the following five slaves" (naming them), "and such other property and money as my children have heretofore received. I have heretofore given each of my children five negroes, and have also given them other property and money; and it is my desire that my wife shall be placed on an equal footing in the division of my property, with my children. My children all know what they have received from me, and I wish my wife to receive a like amount; and this last bequest must take effect before a division of my prop-

erty is made, and when this is done I think none will have cause
to complain."

It is insisted on the part of the appellants, that having pro-
vided, in the first part of the will, that his estate should be
equally divided between his widow and children, either imme-
diately after his death, or after his debts should be paid, the
clause in relation to his wife having an ample support out of
his estate had not reference to the time when the final division
and distribution of the shares of the parties should be made, as
the period until which support should be furnished her, but to
the time when she should receive the five slaves, and money to
the amount of what he had given his children. In support of
this view, it is contended that the words employed in this clause,
and that which immediately follows it, show that he had refer-
ence to the time when she should receive the property specially
bequeathed to her, and not to the time when she should receive
her share of the estate on the final distribution ; that the ques-
tion, what property was referred to in the first clause, which
provides for her support " until such time as may be required
to enable her to have control of *her own property*," is solved
by the clause which immediately follows, that she " shall have,
as *her own property*," the five slaves, etc. ; and that it is thus
shown that the former was the antecedent and the latter the
relative, and that when the five slaves and money were received
by her, her right to the support was at an end.

This view, though plausible, is not consistent with other pro-
visions of the will, and with the intention of the testator as
manifested by its general context. A literal construction is not
to be indulged, which would defeat an intention appearing from
the whole will ; but we must consider all its parts and the cir-
cumstances under which it was made, as shown on its face, and
thereby ascertain the intention of the testator.

It is very manifest, from the instrument, that it was a cher-
ished object of the testator to make suitable provisions for the
support of his wife after his death. The dispositions of his prop-
erty were such that, if accepted by her, she would be deprived
of the means of support which our laws allowed her ; and it

appears from his declarations in the will, that he was greatly desirous that she should not renounce it. Indeed he inserted provisions in the will expressly to prevent that course on her part. He appears to have been a man of intelligence and of strong practical judgment, and to have regarded his wife, as well as his children, with very great affection, and with much consideration for their future welfare. It is highly probable, from his intelligence shown in the will, that he was aware of the provision which the law made for her support after his death, and that she would lose the benefit of that by accepting the will, and would have no means of support except such as were provided by the will.

It is likewise apparent, from the face of the will, that the testator contemplated the contingency that his property might be kept together for a considerable length of time, for the purpose of raising the means to pay his debts, the necessary result of which would be to defer the final distribution, by which his widow would be without the benefit of her ultimate share of his estate, in all probability, for several years. And it would be inconsistent with the solicitude for the welfare of his wife, which he fully manifests, to suppose that he did not intend to make adequate provision for her support in the meantime.

It is also highly improbable that a man of his intelligence, who had given such careful consideration, as is shown by the will, to the condition and circumstances of those to whom he left his property, and especially to his widow, that he was not aware that the property *specially bequeathed* to her would be delivered to her very soon after his death ; for there was nothing in the circumstances of the estate, or in the feelings of his children towards her, to show that such delivery was not anticipated by him. Indeed, it is plain that he expected and desired it ; for, after saying that she should occupy the house and lot in which he might reside at the time of his death, with the furniture, and giving her his carriage and horses that might be on hand at his death, he says it is his will " that she *shall have* as her own property " the five slaves named, and such other property and money as his children had theretofore received ; and then he

states "that this last bequest must take effect before a division of his property is made."

He was a man of large estate, worth some $250,000 or more; his family occupied a high position in society in Aberdeen, where he resided, and he lived in the enjoyment of all the comforts and conveniences of life, bountifully, and even sumptuously, up to the time of his death.

These circumstances enable us correctly to interpret his true intention in the provision of his will, for the "ample support" of his wife until "she should have control of her own property;" and from them it appears to us quite clear that "her own property" contemplated, was not the property specially bequeathed to her.

In the first place, that property was entirely inadequate to her support. It consisted of the use and occupancy of the family mansion and furniture, a carriage and horses, four female slaves, and one male slave, which were, doubtless, household servants; and such other property and money as he had given his children severally—which is shown to be only $300. The carriage and horses, and the slaves, could not be productive of income, but must be a source of expense, as the horses had to be fed, and the slaves fed and clothed, with medical bills and other necessary expenses to be incurred on their account. To meet all the expenses necessary for her own food and clothing, and family establishment, in the style in which the testator must have intended she should live, and to bear the expenses above-mentioned to be incurred on account of the other property left her, she would have had only the sum of three hundred dollars, if the construction of the will contended for by the appellants be correct. It is very clear that that sum must have been quite insufficient for her necessary support, even with the strictest economy that she could have used, and that a person of her position in society could have been expected to adopt. This sum would have been entirely inadequate to her reasonable expenses for one year; and to have restricted her to the state of living which that sum would have driven her to for one year's expenses, is most clearly what the testator never

contemplated; and such a result a man of his practical sense could not have failed to notice, and therefore could not have intended.

But when we consider that, under the construction contended for on the part of the appellants, this sum might—in the contingency contemplated in the will, of keeping the property together probably for years for the payment of the testator's debts—be postponed for that length of time; it is wholly out of the question that he could have intended that this sum should be her only means of support for that time.

Again, it is evident from the face of the will, that she should have the property specially left her, immediately after his death. She was to continue to use and occupy the dwelling-house and furniture after his death, and the other property specially bequeathed to her was given for the same purpose, and was indeed necessary to her keeping and occupying the house as her place of residence; for without the servants and money she could not have kept house. It is therefore clear, that he intended this property and money to be delivered to her soon after his death; and, hence, there would have been no necessity that he should make provision for her support until that property should come to her possession; and it is in the highest degree unreasonable that, with reference to her obtaining possession of that property, he would have directed that she should " have *ample support* out of his estate, *until such time as may be required* to enable her to have control of her own property." For no time was contemplated as necessary to enable her to have such control, and which could require that provision should be made for her support in the interim.

But it is clear that the property specially bequeathed her was not the property referred to in this clause, since, by an express clause in the will, she was to have that property " before division " of his general estate; and the reason of that disposition is stated to be to make her equal, before the general distribution, with his children, who had already received the same amount of property from him, so that she and they, when the general distribution should be made, should come in on the same footing.

From all this it is manifest, that the "ample support" intended by the testator, had reference to the time when she should receive her share of the estate upon the general distribution, and that provision for that purpose should be made until that time.

The next question presented is, whether the widow *waived* her right to this support until final distribution, by giving her consent, as she did in December, 1859, to the sale of the property, which was proposed by the executors.

We are unable to perceive on what ground her consent to this sale could operate as a release of her claim. It appears that the sale was made by order of the Court of Probates, and for the purpose of distribution among the legatees. For aught that appears, the sale might have been ordered by the court, without the consent of the widow; and it must have been made on the application of the executors. The order of sale must have been made by the court, on the ground that the property was not susceptible of equal division between all the parties entitled. It was, then, a step necessary toward the *distribution* of the estate, which was the result contemplated by the testator; for the provision of the will is, that she should have the support until the estate should be distributed. It was not distributed by the sale; and the same necessity existed for her support after the sale and until such distribution as before. The sale was a mere legal mode of effecting a distribution, and her consent to it certainly could not prejudice any right that she would have had if she had not given her consent.

But it was a step taken by the executors in order to effect a distribution; and they cannot be heard to say that she has lost her right of support because she consented to their act, done for the purpose of effecting a distribution.

It is said that she waived her right of support because the sale was made for a price enhanced over the appraised or estimated value of the property, and that it bore interest which would increase her distributive share when finally realized; and that her consent, and the benefit arising to her in consequence of the sale, amounted in effect to a distribution, and therefore put an end

to her right of support. But the sale seems to have been by consent of all parties interested, and the other distributees were equally benefited by it with herself. And the same reason and necessity for her support continued after, as before it was made, and must have continued, for aught that appears, until her share of the estate was distributed to her.

There is, therefore, no force in this objection.

The last objection urged is, that the allowance was excessive.

It appears, by the evidence, that the family were of the first class of society during the testator's life; that they lived in the abundant enjoyment of all the comforts of life customary in the place among persons of standing and wealth, liberally and even sumptuously. The direction of the will is, that she should have an *ample* support out of his general estate, and his bequest to her of five slaves, which appear to be domestic and family servants, and his carriage and horses, shows that he expected her to live in the same liberal manner to which she had been accustomed. The testimony on which the court fixed the amount of allowance for her support, goes to show that from $2,000 to $3,000 would have been necessary for her support in the manner in which she had previously lived; and the court took the lowest sum stated by the witnesses, which was $2,000.

We think that this allowance was reasonable, just, and proper, in her circumstances, and that it is fully justified by the expectations of the testator, as shown by his will.

Let the decree be affirmed.